UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　Plaintiff,<br><br>　v.<br><br>SHABNAM DAWN PILISUK,<br><br>　　　　　　　Defendant. | CASE NO. CR22-001 TL<br><br>ORDER ON MOTIONS *IN LIMINE* |

This matter comes before the Court on Defendant Shabnam Dawn Pilisuk's motions *in limine* (Dkt. No. 53) and the Government's motion *in limine* to exclude improper references to punishment or custodial time (Dkt. No. 56). Having reviewed the relevant record and governing law and finding oral argument to be unnecessary (*see* CrR 12(b)(12)), the Court RULES on the motions as discussed below.

## I. BACKGROUND

Defendant faces criminal charges for aggravated sexual abuse of a child under twelve, production of child pornography, transportation of a minor with intent to engage in criminal

sexual activity, and possession of child pornography. Dkt. No. 15 (indictment). Most of the charges relate to her alleged abuse of a single child ("MV1"). In advance of trial, the Parties have filed motions *in limine*.

## II. LEGAL STANDARD

"A motion in limine is a procedural mechanism to limit in advance [of trial] testimony or evidence in a particular area." *United States v. Heller*, 551 F.3d 1108, 1111 (9th Cir. 2009) (citation omitted), *cert. denied*, 556 U.S. 1252. In ruling on motions *in limine*, the Court is generally guided by Federal Rules of Evidence ("FRE") 401, 402, and 403. *See* Fed. R. Evid. 401 (defining relevant evidence); Fed. R. Evid. 402 (relevant evidence is generally admissible); Fed. R. Evid. 403 (relevant evidence may be excluded if its probative value is substantially outweighed by a danger of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence"). While the FRE do not explicitly permit motions *in limine*, they are a part of a "district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984). A motion *in limine* is ordinarily granted only if the evidence at issue is inadmissible on all potential grounds; if not, the evidentiary ruling is better deferred until trial, to allow for questions of foundation, relevancy, and prejudice to be resolved with the appropriate context. *See United States v. Sims*, 550 F. Supp. 3d 907, 912 (D. Nev. 2021). A motion *in limine* should not be used to resolve factual disputes or weigh evidence. *Id.*; *Liu v. State Farm Mut. Auto. Ins. Co.*, No. C18-1862, 2021 WL 717540, at *1 (W.D. Wash. Feb. 24, 2021).

A court's ruling on a pre-trial motion *in limine* is preliminary and can be revisited at trial based on the facts and evidence as they are actually presented. *See, e.g.*, *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000) ("[I]n limine rulings are not binding on the trial judge, and the judge may always change his mind during the course of a trial."). "Indeed even if nothing

unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling." *Luce*, 469 U.S. at 41–42; *see also City of Pomona v. SQM N. Am. Corp.*, 866 F.3d 1060, 1070 (9th Cir. 2017) (district court may change its *in limine* ruling at trial if testimony brings unanticipated facts to the court's attention).

Subject to these principles, the Court issues these rulings for the guidance of the Parties.

### III. DISCUSSION

A.  **Defendant's Motions *in Limine***

Defendant brings seventeen motions *in limine*. Dkt. No. 53. The Government opposes only half of these motions. *See* Dkt. No. 62 (opposing, at least in part, motions 1, 2, 4, 5, 6, 7, 8, 11).

As a preliminary matter, the Court admonishes counsel for Defendant for failing to comply with the meet-and-confer requirement set forth in the Local Criminal Rules. *See, e.g.*, CrR 12(b)(7) (motions *in limine* pursuant to CrR 23.2 must include a certification "that the movant has in good faith conferred or attempted to confer with opposing counsel in an effort to resolve the dispute without court action"). The large number of issues raised in Defendant's motions to which the Government does not object results in a significant waste of both the Parties' and this Court's time, which is what the local rules were meant to prevent.

  1.  **Use of Non-Testifying Witness Statements**

Citing general principles of the Rules of Evidence on hearsay, Defendant requests that the Court suppress the Government from presenting statements from non-testifying witnesses at trial pursuant to the Confrontation Clause of the Sixth Amendment. Dkt. No. 53 at 1–2. The Government points out that the Defendant's request is not related to any specific witness or statement, and the Government represents that it intends to offer evidence consistent with Federal Rules of Evidence and caselaw interpreting the Confrontation Clause. Dkt. No. 62 at 1.

Given the non-specific nature of Defendant's request, the Court RESERVES RULING on Defendant's motion *in limine* regarding the use of non-testifying witness statements and will rule on a case-by-case basis about such statements as needed.

2. **Evidence of Defendant's Prior Bad Acts**

Defendant requests the Court to exclude evidence of three categories of prior bad acts: (1) Defendant's affair with her adult nephew; (2) other criminal charges in King County; and (3) other complaints to state or federal agencies.

a. ***Defendant's Affair with Her Adult Nephew***

Defendant requests the exclusion of any evidence of a consensual affair with her adult nephew. Dkt. No. 53 at 3–5. The Government opposes this portion of Defendant's motion. Specifically, the Government asserts that Defendant essentially used the television show *The Game of Thrones* to groom MV1 and that Defendant's affair with her nephew involved them roleplaying as two characters from that television show. Dkt. No. 62 at 2. While the evidence of Defendant's affair with her nephew is certainly relevant, the crime charged in this case is not incest, and the risk of prejudice far outweighs its probative value given societal norms, even if the affair was with another adult. Therefore, the Court finds that any evidence of this affair should be excluded under FRE 403.

The Court, therefore, GRANTS Defendant's motion with regard to her affair with her nephew. However, the Court cautions that should Defendant argue at trial that she was only interested in incest as a concept but never acted on that interest in her real life, she will open the door to the admission of evidence of her affair with her nephew.

b. ***Other Criminal Charges in King County***

Defendant anticipates that the Government will seek to introduce evidence that she was "initially charged in King County in this matter." Dkt. No. 53 at 3. The Government responds

that it does not intend to refer to the procedural status of the King County Superior Court cases. Dkt. No. 6 at 2. To the extent Defendant requests the Court exclude evidence regarding the underlying charges, the Court DENIES Defendant's motion for the reasons stated in the Court's Order regarding the Government's Motion to Admit Evidence Under Rules 404(b) and 414. *See* Dkt. No. 81.

        c.    **Complaints to Other State or Federal Agencies**

While Defendant does not address the issue of "any other complaints to state or federal agencies" other than to include it in a subheading title (*see* Dkt. No. 53 at 2–5), the Government states that it does not intend to offer reports relating to Child Protective Service complaints about Defendant or referrals to Colorado and Nevada for additional criminal charges (Dkt. No. 62 at 3).

Given the lack of opposition, the Court GRANTS Defendant's motion *in limine* with respect to complaints to other state or federal agencies.

    3.    **Evidence Relating to Witness Tyrone Becker**

Should Tyrone Becker testify against Defendant, Ms. Pilisuk requests to admit facts regarding Mr. Becker's involvement with the Community Incest website, child pornography on his computers, and his turning others in to avoid jail himself. Dkt. No. 53 at 6. She also seeks to introduce evidence that nude photos of MV1 were only found on Mr. Becker's computer as well as facts relating to Mr. Becker's conviction and sentence in King County Superior Court for possession of depictions of minors engaged in sexually explicit conduct. *Id.* at 7. The Government responds that it intends to offer this evidence in its case in chief. Dkt. No. 62 at 3.

Given the lack of opposition, the Court GRANTS Defendant's motion *in limine* to admit evidence relating to Tyrone Becker.

    4.    **Evidence Relating to Defendant's Sexual Preferences and Actions**

Defendant requests the exclusion of certain facts regarding her lifestyle. Dkt. No. 53 at

7–9. The Government does not object to refraining from eliciting testimony regarding the following: (a) Ms. Pilisuk's multiple sexual partners, (b) her unhappiness in her marriage, (c) her possession of an "incest card" in the board game "Cards Against Humanity," (d) a CPS referral about her jokes about incest, or (e) her involvement in a pornography ring when she was a child. Dkt. No. 53 at 8; Dkt. No. 63 at 3. While these facts might be relevant, their probative value is substantially outweighed by the danger of unfair prejudice. As such, the Court GRANTS Defendant's motion *in limine* with regard to the exclusion of these particular facts.

With respect to the other facts that Defendant seeks to exclude under this motion *in limine* (specifically, allegations of her running and ownership of an incest website, her involvement in risqué burlesque performances, her allowing sex offenders to babysit her son, the family's visit to a nudist resort, her gifting of a sex toy to her son at a very young age, and her own experience as a victim of incest and rape by family members), the Court finds that the additional context provided for each fact in the Government's response demonstrates that the evidence is relevant. *See* Dkt. No. 62 at 3–5. The evidence is not, as Defendant claims, to generally show that she is a deviant (*see* Dkt. No. 53 at 8) but to demonstrate her intent to commit the charged offense, her deep interest in incest, her grooming of MV1, and normalizing of the abuse, as well as to corroborate the testimony of other witnesses (Dkt. No. 62 at 3–4). The Court finds that the probative value of these facts is not substantially outweighed by the danger of unfair prejudice. Therefore, the Court DENIES Defendants motion *in limine* with regard to the exclusion of these particular facts.

       5.    **Psychosexual Evaluations of Defendant**

Defendant underwent two psychosexual evaluations as part of plea negotiations for charges filed against her in King County Superior Court and requests the Court bar the use of those evaluations for any purpose. Dkt. No. 53 at 9–10. The federal rules of evidence and

criminal procedure generally prohibit the admission of statements made by a criminal defendant during plea negotiations. Fed. R. Evid. 410; Fed. R. Crim P. 11(f). However, as Defendant acknowledges, "the Supreme Court held that the Federal Rules are waivable for purposes of impeaching a defendant who chooses to testify at trial." Dkt. No. 53 at 9 (citing *United States v. Mezzanatto*, 513 U.S. 196, 200–03 (1995)).

The Government responds that it will only use the evaluations should Defendant take the stand and testify in a manner inconsistent with the evaluations. Dkt. No. 62 at 5. The Government also provides a letter from the King County Prosecutor's Office informing Defendant that the evaluations "may be used to impeach the defendant if [s]he chooses to testify." Dkt. No. 62-1.

The Court GRANTS the motion *in limine* in part and DENIES it in part. The Government may only introduce evidence of the psychosexual evaluations for impeachment purposes if Defendant takes the stand and testifies inconsistently with any statements contained in the evaluations.

6.    **The Use of the Terms "Victim," "Suspect," and "Defendant"**

Defendant requests that the Court order counsel to refrain from the use of the terms "victim," "suspect," and "Defendant" when referring to participants in the case. Dkt. No. 53 at 10. Defendant cites cases supporting the generally well-accepted premise that a prosecutor may not express or suggest a personal opinion regarding the guilt of an accused person. For example, in *United States v. McKoy*, a former prosecutor testified as a witness and impermissibly opined that he felt the government had "an extremely strong case" against the defendant. 771 F.2d 1207, 1210–13 (9th Cir. 1985). Similarly, in *United States v. Kerr*, the prosecutor described witnesses as "candid" and "honest," which the Ninth Circuit found impermissible as the prosecutor "deliberately introduced into the case his personal opinion of the witnesses' credibility." 981

F.2d 1050, 1053 (9th Cir. 1992). But these cases do not address the mere use of the terms at issue in Defendant's motion.

As the Government points out, all three of the terms are commonly used in the legal process, and the terms "defendant" and "victim" appear frequently in the Ninth Circuit Model Criminal Jury Instructions. Dkt. No. 62 at 5. Further, the Ninth Circuit has found that the use of the term "child-victim" rather than "child-witness" was permissible where the trial court defined the term "victim" for the jury to mean "the person whom the defendant *allegedly* subjected to criminal sexual conduct.'" *See id.* (citing *Guam v. McGravey*, 14 F.3d 1344, 1348 (9th Cir. 1994) (emphasis added by appellate court). The Ninth Circuit held that "[t]his definitional instruction was an adequate safeguard against any potential prejudice that might conceivably flow from the use of the word 'victim.'" *McGravey*, 14 F.3d at 1348.

The Court DENIES the motion but encourages Defendant to propose supplemental language for jury instructions with regard to these terms, if appropriate. Further, while the terms in and of themselves do not necessarily infer any opinion, the manner in which they are used (*e.g.,* the tone, emphasis, or body language accompanying the use of the terms), could potentially convey an opinion. Therefore, the Court encourages counsel for both parties to refer to the participants by their names and stresses the importance of civility in the proceedings. Defendant can, of course, object at trial should she believe the Government is behaving inappropriately.

### 7. Speculation Regarding Defendant's Emotional and Mental States

Defendant makes a general request for the Court to exclude speculation regarding Defendant's mental or emotional state. Dkt. No. 53 at 11. In other words, the Defendant asks the Government to follow the rules of evidence (specifically FRE 602). The Court expects all parties to follow the rules of evidence as well as any controlling caselaw interpreting the rules. As Defendant did not address any specific concern, the Government surmises that she might be

ORDER ON MOTIONS IN LIMINE - 8

referring to potential lay opinion testimony from law enforcement regarding the meaning of Defendant's communications but recognizes the Government will be required to meet the requirement of FRE 701 should it seek to do so. Dkt. No. 62 at 6.

The Court STRIKES this motion as unnecessary. Defendant can, of course, object at trial should this issue arise.

### 8. Statements by Law Enforcement During Questioning

Defendant requests the Court exclude statements made during an interview of her by a specific officer, Detective Conine, which Defendant asserts reflect the officer's opinion regarding her activities. Dkt. No. 53 at 11. The Government responds that Detective Conine "used a specific law enforcement technique . . . to elicit a response from [Ms. Pilisuk]." Dkt. No. 62 at 6.

The Ninth Circuit has addressed the admission of a law enforcement officer's questions in a pre-trial interview. *See Dubria v. Smith*, 224 F.3d 995, 1001–02 (9th Cir. 2000). The Ninth Circuit concluded that where such statements express disbelief or an opinion regarding an interviewee's story but give context to the interviewee's responses, they are "not the types of statements that carry any special aura of reliability." *Id*. Further, any potential prejudice can be cured with a jury instruction that such questions should be considered "as mere questions and not as evidence." *See id.*[1]

---

[1] One of the instructions given by the trial judge that the Ninth Circuit found mitigated any potential prejudice was: "I want to caution you [that] you are not to consider any of the statements that Detective Detar makes for the truth of the matters asserted in those statements. Those are just . . . questions in the form of statements. They are not to be considered for the truth, they are only to be considered as [to] how they may give meaning to the answers." *Dubria*, 224 F.3d at 1002.

The Court DENIES the motion to exclude statements made by Officer Conine during law enforcement questioning but encourages the Parties to propose supplemental language for a limiting instruction with regard to Officer Conine's statements.

9. **Hearsay Testimony from Investigating Officers**

Defendant requests the Court prohibit law enforcement officers from testifying as to statements they received from others and notes that "the officers' states of mind" are irrelevant. Dkt. No. 53 at 11–12. The Government responds that it will follow the rules of evidence regarding hearsay. Dkt. No. 62 at 7.

The Court STRIKES Defendant's motion *in limine* regarding hearsay testimony from investigating officers as unnecessary, as it simply asks the Government to follow the rules of evidence, which all counsel are expected to do as officers of the Court.

10. **Cross-Examination of Officers Regarding Lack of Investigation**

Defendant requests the Court allow cross-examination of officers regarding "any lack of investigation in this case." Dkt. No. 53 at 12. The Government agrees that Defendant can cross-examine law enforcement witnesses regarding investigative steps they may or may not have taken in the course of the case. Dkt. No. 62 at 7.

Given the lack of opposition, the Court GRANTS Defendant's motion *in limine* regarding any lack of investigation.

11. **Limiting Cross-Examination of Defendant**

Defendant requests any cross-examination of Defendant be strictly limited to the scope of direct examination and matters intended to impeach the credibility of Defendant's testimony given on direct. Dkt. No. 53 at 13–14. The Government acknowledges that Defendant can object to questions asked on cross-examination as "beyond the scope" of her direct examination. Dkt. No. 62 at 7. The Government also correctly notes that bias, motivation, or ability to perceive are

valid topics of cross-examination, even if not covered in direct examination. "Proof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony." *United States v. Abel*, 469 U.S. 45, 52 (1984); *accord United States v. Hankey*, 203 F.3d 1160, 1171–72 (9th Cir. 2000) (quoting *Abel* and allowing "impeachment [of a criminal defendant] for bias or coercion"). The Supreme Court has also recognized that "the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination." *United States v. Larson*, 495 F.3d 1094, 1102 (9th Cir. 2007) (en banc) (quoting *Davis v. Alaska*, 415 U.S. 308, 318 (1974)). Additionally, "[w]hat the defendant actually discusses on direct does not determine the extent of permissible cross-examination or of his waiver [of the Fifth Amendment privilege against self-incrimination] . . . . Rather, the inquiry is whether the government's questions are reasonably related to the subjects covered by the defendant's testimony." *United States v. Black*, 767 F.2d 1334, 1341 (9th Cir. 1985); *accord United States v. Kash*, 751 F. App'x 1007, 1009 (9th Cir. 2018) (citing *Black*, 767 F.2d at 1341; *see also Fowler v. Sacramento Co. Sheriff's Dep't*, 421 F.3d 1027, 1036 (9th Cir. 2005) ("[T]he cross-examiner is . . . permitted to delve into the witness' story to test the witness' perceptions and memory . . . ." (quoting *Davis*, 415 U.S. at 316)); *Creekmore v. Dist. Ct. of Eighth Jud. Dist. of Mont. in & for Cascade*, 745 F.2d 1236, 1238 (9th Cir. 1984) ("The goal of cross-examination is to expose flaws in a witness's memory, perception and narration.").

      Given the general lack of opposition, the Court GRANTS in part Defendant's motion *in limine* regarding the permissible scope of her cross-examination but DENIES the motion in part to the extent it seeks to preclude questioning of Defendant regarding bias, motivation, or ability to perceive.

12. **Production of All Government Presentation Materials**

Defendant requests advance notice of and an opportunity to review any demonstrative materials the Government may use during trial. Dkt. No. 53 at 14. This is not technically a motion *in limine* and is a standard courtesy expected of all parties. Further, the Government represents that the Parties have agreed to share PowerPoint or other visual presentations with each other and to coordinate the timing for that sharing prior to their presentations. Dkt. No. 62 at 7.

The Court STRIKES this motion as unnecessary and notes that a conferral with the Government prior to filing it, as required by the local rules, would have obviated any need to raise this issue to the Court.

13. **Witness Testimony from Reports**

Defendant requests that witnesses be prohibited from testifying directly from a written report, citing the general rule against hearsay. Dkt. No. 53 at 14. In other words, the Defendant asks the Government to follow the rules of evidence (specifically FRE 802). The Government agrees that it will utilize exhibits to refresh a witness's recollection within the limits established by the rules of evidence. Dkt. No. 62 at 7.

The Court STRIKES this motion as unnecessary. As with all the motions stricken for simply requesting the opposing party to follow the FRE, Defendant may object at trial, if appropriate.

14. **Review of Notes by Witnesses**

Defendant requests the Court prohibit witnesses from looking at their notes or reports unless they testify that they need to refresh their recollection and to prohibit further testimony from any witness who testifies that their memory is not refreshed from reviewing their notes or reports. Dkt. No. 53 at 14. Again, the Defendant asks the Government to follow the rules of

evidence (specifically FRE 612), which the Government, of course, agrees it will do. Dkt. No. 62 at 8.

The Court STRIKES this motion as unnecessary.

15. **Motions to Prevent Governmental Misconduct**

Defendant requests the Court prevent governmental misconduct and goes on to list a number of areas of concern relating to potential inflammatory arguments that might be made and a host of other potentially inappropriate statements. Dkt. No. 53 at 14–21. Defendant also clarifies that she "in no way suggests that the Government, in this case, would engage in th[is] type of misconduct." *Id*. at 14. The Government responds that it is aware of limits placed on counsel when making arguments before the jury and that either party can object if one believes those limits have been exceeded. Dkt. No. 62 at 8.

While the Court agrees with Defendant as to the general principles outlined in her motion, the Court also trusts that counsel, as officers of the Court, will comply with the applicable rules and expectations of professional conduct. Accordingly, the Court RESERVES RULING on Defendant's motion in limine regarding possible prosecutorial misconduct and will rule on a case-by-case basis as needed should the issues described arise during trial.

16. **Discussion of Burdens of Proof with the Jury**

Defendant requests the Court allow prospective jurors to be questioned about their understanding of standard of proof in a criminal case and to allow counsel to discuss the differing burdens of proof during closing argument. Dkt. No. 53 at 21–23. The Government does not object to Defendant discussing the burdens of proof with the jury venire or in closing arguments. Dkt. No. 62 at 8.

The Court GRANTS Defendant's motion *in limine* regarding discussion of burdens of proof with the jury.

17. **Potential Additional Motions Regarding Discovery**

Defendant seeks to reserve the right to bring additional motions regarding the review of the "X" drive from a "Falcon Tower with computer Hard Drives," which her expert witness, Terry Lehman, has not yet been able to examine. Dkt. No. 53 at 23–24. Defendant complains that Mr. Lehman "has attempted several on-site visits with the Government," during which the "X" drive has not been provided to him. *Id.* The Government responds that since the filing of Defendant's motion, "the defense forensic expert has been provided all requested devices and data." Dkt. No. 62 at 8. The Government also provides context for why so many visits were required and confirms that the only additional visits would be to analyze data previously provided by the Seattle Police Department. *Id.*

The Court GRANTS Defendant's motion to reserve the right to bring additional motions regarding Mr. Lehman's review of the "X" drive. If any additional motion relating the "X" drive from a "Falcon Tower with computer Hard Drives" becomes necessary, it shall be filed by **February 3, 2023**, and any response shall be filed by **February 8, 3023**. No replies shall be allowed.

B. **The Government's Motion to Exclude References to Punishment or Custodial Time**

The Government requests the exclusion of evidence or argument referring to the potential punishment or prison time Defendant faces if found guilty or the custodial time she has already served in connection with this case. Dkt. No. 56. Defendant responds that she seeks to impeach the testimony of Government witness Tyrone Becker by comparing his sentence "and court proceedings/charges/potential imprisonment" with those she faces. Dkt. No. 66 at 2.

First, it is well-established that references to the sentence or incarceration a defendant may face "invites [jurors] to ponder matters that are not within their province, distracts them from their factfinding responsibilities, and creates a strong possibility of confusion." *Shannon v.*

ORDER ON MOTIONS IN LIMINE - 14

*United States*, 512 U.S. 573, 579 (1994) . Further, Ninth Circuit Model Criminal Jury Instruction 6.22 charges the jury that it "may not consider punishment in deciding whether the government has proved its case against the defendant beyond a reasonable doubt." *Manual of Model Criminal Jury Instructions for the Ninth Circuit* § 6.22 (2022).

Second, it is standard impeachment practice to question a witness about the facts underlying their charge or conviction, any other charges that could have been brought against them based on the evidence elicited, and the time they could have faced for the crimes charged or uncharged in comparison to the sentence they actually received. Defendant may cross-examine Mr. Becker with regard to these topics as they relate to any child sexual abuse offenses and about the sentence he received or could have received. *That* is appropriate impeachment; the punishment *Defendant* may face is not.

The Court GRANTS the Government's motion *in limine* to exclude references to Defendant's punishment or custodial time.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS in part, DENIES in part, STRIKES in part, and RESERVES RULING in part on the Parties' motions *in limine*.

Dated this 27th day of January 2023.

Tana Lin
United States District Judge

ORDER ON MOTIONS IN LIMINE - 15